JOHN L. HOLCOMB, JR, BAR ID #258175
jholcomb@khslaw.com
SHAHROKH SHEIK, BAR ID #250650
ssheik@khslaw.com
KRAMER HOLCOMB SHEIK LLP
1925 Century Park East, Ste. 1180
Los Angeles, California 90067
Telephone: (310) 551-0600
Facsimile:  (310) 551-0601

*Attorneys for Defendants and Counter-Claimants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISS GLOBAL ORGANIZATION LLC, a California limited liability company and VAN PHAM, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SOKHUNTEA MAK, as known as TEA MAK, an individual; SCOTT WARE, an individual; and DOES 1 through 10,<br><br>Defendant.<br><br>MISS GLOBAL ORGANIZATION, LLC, a California limited liability company and SOKHUNTEA MAK, as known as TEA MAK, an individual;<br><br>Counter-Claimants,<br><br>vs.<br><br>VAN PHAM, an individual, and DOES 1 through 10,<br><br>Counter-Defendant. | Case No.: 8:17-CV-2223<br><br>**FIRST AMENDED COUNTER-CLAIM FOR:**<br><br>**1.   COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Action Filed:  12/20/2017<br>Trial Date:     7/23/2019 |

Counterclaimant Sokhuntea Mak ("Mak") hereby alleges as follows:

FIRST AMENDED COUNTER-CLAIM

## COUNTERCLAIM

1. For her counterclaim against Plaintiff and Counter-Defendant Van Pham ("Pham"), Defendant and Counter-Claimant Sokhuntea Mak ("Mak") alleges as follows:

## THE PARTIES

2. Counter-Claimant Mak, is an individual, who resides in Issaquah, Washington. Mak is the founder and CEO of MISS GLOBAL ORGANIZATION LLC ("MGO").

3. Counter-Defendant Pham is an individual who resides in Los Angeles County.

4. The true names and capacities of counter-defendants Does 1 through 10, inclusive, are unknown to Counter-Claimant. Counter-Claimant therefore sues these counter-defendants by such fictitious names. Counter-Claimant will appropriately seek leave of Court to amend these counter claims to show the true names and capacities of such counter-counter defendants when that information has been ascertained.

## JURISDICTION

5. This court has jurisdiction over these counterclaims pursuant to 28 U.S.C. section 1332.

6. This action is filed pursuant to the Copyright Act, 17 U.S.C. §§ 101, et seq.(the " Copyright Act").

## VENUE

7. Venue is proper in the Central District because Counter-Defendant brought his lawsuit against Counter-Claimant in the Central District, and because Counter-Defendant or his agents do business in and/or may be found in the Central District.

////
////
////

FIRST AMENDED COUNTER-CLAIM

## GENERAL ALLEGATIONS

8. Mak and Pham have known each other for over 20 years.

9. Mak has a long-standing career in the entertainment industry as a consultant, red carpet host, model, and actress.

10. Around April 2011, Pham requested to meet with Mak. During the meeting, Pham asked Mak about her connections in the entertainment industry. Ultimately, Pham and Mak continued discussing business ideas. Pham suggested that he and Mak start a business together, preferably in the entertainment field. Pham intended to start a business with Mak to capitalize on her established connections in the entertainment industry. The parties met at least seven times in person in Los Angeles during 2011.

11. In September 2011, Pham and Mak discussed business ideas together at Pham's home. The two spent a couple of days meeting together to determine what business they should launch. Pham initially suggested starting an Asian awards show, but Mak had reservations about its potential for success. Mak suggested that they create a company that arranges and conducts beauty pageants instead, and Pham agreed.

12. Mak came up with the company name Miss Global Organization.

13. Mak ran a search for the domain name on Host Monster, and found it was available. Because Pham already had an account on Host Monster, he was instructed to purchase the domain name on MGO's behalf along with five other domain names related to MGO.

14. At MGO's inception, in September 2011, Pham and Mak verbally agreed to share an equal 50-50 ownership interest in MGO. Mak and Pham are the co-founders of MGO.

15. The material terms of the agreement, which were discussed an agreed upon, included that Pham and Mak would share equal ownership interest in MGO. It was agreed that Mak would provide the vision for MGO and establish and oversee the company's operations and procedures, and Pham would handle MGO's financial operations.

16. Since the company's inception, Mak has expended significant time and recourses developing MGO. Mak formulated all of the ideas behind the development of MGO including, but not limited to, the company name, the company trademark, the rules and regulations, business model, judging criteria, logo designs, slogans, and company mission. She determined how to attract contestants and sponsors, how to build strategic relationships with countries for purposes of conducting an international pageant, and the nonprofits MGO would work with.

17. In and around April 2011, Mak created the MGO design and logo (the "Work").

18. In early March 2012, Pham called Mak to ask her how to get a business license for MGO in California. She advised him on the process. Pham assured Mak that he would put her name on the business registration filing.

19. On March 10, 2012, Pham registered MGO with the California Secretary of State as a limited liability company. Pham assured Mak that her name was on MGO's business registration filing as an owner of the company. However, this was a lie. It was not until September 2017 that Mak discovered that Pham had failed to list her as an owner of MGO in the company's business registration filing. Subsequently, Mak had repeated discussions with Pham about adding her name to MGO's business registration filing, and Pham repeatedly assured Mak he would make the change, as they were joint owners of MGO. However, Pham never added Mak's name.

20. In July 2012, Pham opened a Bank of America business account for MGO without Mak, despite the fact that Pham and Mak had agreed that they would both be signers on the account for MGO. Pham assured Mak that he would add her to the account. Subsequently, during Mak's next visit to Los Angeles, Pham gave Mak the authorization documents to sign to be added as a signer on MGO's bank account. Mak gave Pham the completed documents, however, Pham never added Mak to the account. Every time Mak confronted Pham about being added to the account, he made misrepresentations.

FIRST AMENDED COUNTER-CLAIM

21. On October 2, 2012, Pham registered MGO's trademark, Registration No. 4,219,443. Pham registered the trademark under his personal name despite the fact that he and Mak had specifically agreed that MGO's trademark would be registered under the company's name. Pham assured Mak that the trademark was registered under the company's name. It was not until September 2017 that Mak discovered that Pham had registered MGO's trademark under his personal name rather than under the company name. MGO's trademark is completely based on Mak's design.

22. Around November to December 2012, Pham requested that Mak do the majority of contestant recruiting. Mak spent approximately seven months recruiting contestants for MGO. Through Mak's established reputation in the entertainment industry and hard work she was able to recruit contestants and successfully launch MGO.

23. Mak had the vision and expertise to develop MGO into a successful company that arranges and conducts beauty pageants worldwide. As the company representative, Mak brought credibility to MGO. Mak's established reputation and many years of hard work in the entertainment industry prior to MGO's creation is the reason the company had a successful launch.

24. Throughout the years, MGO continued to grow and prosper because of Mak's efforts.

25. Pham significantly mismanaged the business operations of MGO. Over time Pham's relationship with MGO staff and contestants became increasingly strained because of his hostile attitude and lack of leadership. Subsequently, Mak began to take more control of MGO's operations.

26. Pham has engaged in numerous acts of inappropriate and wrongful conduct to the detriment of MGO and Mak. Such wrongful behavior includes, but is not limited to, mismanaging MGO's finances and exploiting and disparaging MGO contestants. Pham's wrongful actions have interfered with MGO's relationships with contestants, staff, national directors, sponsors, vendors, investors, and other business contacts.

27. Pham has tarnished Mak's name, publicly or to third parties, by telling numerous individuals on numerous occasions that Mak is "nothing more than the bitch face to Miss Global." Pham has also tarnished Mak's name, publicly or to third parties, by telling numerous individuals on numerous occasions that Pham "is the sole owner of MGO." This has interfered with Mak's ability to conduct pageants for MGO.

28. Since the inception of MGO, Mak has been a 50-50 owner of MGO. Acts that support her ownership include:

    a. Creating the MGO logo design, i.e., the Work;

    b. Creating the MGO Facebook page (created in 2011) photo below



    c. Creating the MGO social media;

    d. Creating the MGO website and over 60 affiliate MGO domains;

    e. Conducting the pageants;

    f. Securing national directors and host countries;

    g. Conducting numerous media and promotional campaigns from 2012 through present.

29. Mak submitted the Work for copyright registration with the United States Copyright Office on March 2, 2018 (U.S. Copyright Case No. 1-6341971121).

30. Mak has always been the sole and exclusive owner of the Work.

31. As an example of her involvement at the pageants, below is a picture of Ms. Mak with the 2015 pageant winner:



32. As another example of her involvement, below is a picture of Ms. Mak holding a press conference with Miss Global 2017 contestants in Cambodia.



- 7 -

FIRST AMENDED COUNTER-CLAIM

33. Despite her ownership interest, she has never received any form of compensation from the company.

34. Ms. Mak worked along side Mr. Pham as co-owners of MGO until they had a falling out in 2017. The events in 2017 between Pham and Mak and MGO included the following:

    a. Weekly phone conference calls regarding the pageant;

    b. In February and March of 2017, Pham and Mak travelled to Vietnam and Cambodia together on behalf of MGO. Mak, being from Cambodia, led many meetings, speaking engagements, and spoke on behalf of Miss Global for numerous press conferences. She met with sponsors, investors, clients, colleagues, and media affiliates, representing herself to everyone and in Pham's presence as a founder and owner of MGO.

    c. In February of 2017, during their tour of Vietnam and Cambodia, Ms. Mak confronted Pham about numerous expenses that MGO had failed to reimburse to contestants. Pham assured Mak that the expenses would be paid.

    d. In April, 2017, Mak asked Pham on numerous occasions to provide profit and loss statements, tax statements, etc. He indicated to her that he was working on obtaining such statements.

    e. In May, 2017, Mak reiterated her request to Pham that the parties document their ownership agreement in writing.

    f. In August, 2017, Mak and Pham had an in person MGO meeting at the Kimpton Everly hotel in Los Angeles. They spoke regarding corporate organization and documentation and future pageants. During this meeting, Pham requested that Mak locate to Los Angeles to operate as CEO out of Los Angeles.

    g. The parties met daily between August 27 and August 29th about strategy and formally documenting business plans for the upcoming pageants.

h. On September 5, 2017, the parties had a conference call wherein they had a dispute about the upcoming MGO budget.

i. Throughout the month of September, Ms. Mak continued to urge Pham to work together on creating formalized corporate documentation and getting the MGO finances in order.

j. On September 6-13, 2017, Mak flew to New York to coordinate MGO 2016 pageant winner Angela Bonilla's appearance in New York Fashion Week, coordinating photoshoots and press and media meetings.

k. On October 3, 2017, Pham and Mak had a phone call wherein Mak reiterated her concerns about corporate debt and failure to make good on debts to contestants.

l. On October 10, 2017, Mak became aware that MGO's secretary of state filing had lapsed into suspended status and confronted Pham about this lapse.

m. On October 30, 2017, Mak flew to Cambodia for the MGO finale event.

n. On November 7, 2017, Mak confronted Van in person at the Sokha Hotel in Cambodia about the corporate debts, complaints, and written corporate documents.

o. On November 10, 2017, Mak emailed Pham an agreement calling for his resignation with MGO.

p. On November 20, 2017, Mak sent Pham the following e-mail:

**November 20, 2017: Termination of Employment email**
From: teamak@missglobal.com
Date: **Mon, Nov 20, 2017 11:42 PM**
Subject: Miss Global Organization Termination Notice: Van Pham
To: vanmpham@yahoo.com

Van,

This letter is to provide continued confirmation of our discussions in person that effective immediately your employment with Miss Global Organization LLC is terminated.

FIRST AMENDED COUNTER-CLAIM

> Effective immediately, you are hereby notified that any attempt you use to misrepresent yourself as being any part of this organization, whether through verbal, written, digital, or any other form of communication including signing contracts, accepting money, whether it be cash, check, ACH, or any other form of payment or barter, or to pay anyone on the pretense that you are somehow part of the Miss Global Organization, or any other form of communication or trying to influence, persuade, or provide claim to any individual, organization, country, or entity, will be classified as false representation, and will be pursuant by the US court of law. You are hereby notified to cease and desist. Any communication otherwise stated by you will be punishable in a court of law, and the maximum penalties will be sought against you

q. On November 30, 2017, Pham retained counsel and sent a cease and desist letter to Mak.

r. On December, 2017, Pham closed the MGO Bank of America account and pulled out the funds therein.

35. As set forth above, an actual dispute between the parties thus exists as to the parties respective ownership interests in MGO.

## FIRST CAUSE OF ACTION
## COPYRIGHT INFRINGMENT
## (MAK against All Counter-Defendants)

36. Counter-Claimant re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

37. Mak is the sole owner of the copyright in an original work that is fixed in tangible media of expression, i.e., the Work:



38. Mak is the sole, exclusive owner of all rights, title, and interest in and to the copyright of the Work.

39. Mak registered the copyright on March 2, 2018 with the United States Copyright Office for the original Work and logo set forth in paragraph 37 above. The Case Number assigned to the registration by the Copyright Office is 1-6341971121. The type of work registered is a "Work of the Visual Arts."

40. Pham is infringing Mak's copyright by knowingly and willfully using the Work without the consent or authorization of Mak. Pham has used the design and continues to this day to use the design on his own website and on marketing materials for the MGO pageant. Pham has produced, reproduced, prepared derivative works based upon, distributed, and publicly displayed Mak's protective Work or substantially similar works without Mak's consent. Pham's acts violate Mak's exclusive rights under the Copyright Act, 17 U.S.C. Sections 106 and 501, including Ms. Mak's exclusive rights to produce, reproduce, and distribute copies of her work, to create derivative works, and to publicly display her Work.

41. Pham's infringement has been undertaken knowingly, and with intent to financially gain from Ms. Mak's protected copyrighted Work. Pham has failed to exercise his right and ability to supervise persons within his control to prevent infringement, and did so with the intent to further his financial interest in the infringement of the Work.

42. Because of Pham's infringing acts, Mak is entitled to her actual damages and Counter-Defendant's profits attributable in an amount to be proved at trial and all other relief allowed under the Copyright Act.

43. Pham's infringement has caused and is causing irreparable harm to Mak, for which she has no adequate remedy at law. Unless this Court restrains Counter-Defendant from infringing Ms. Mak's protected work, the harm will continue to occur in the future. Accordingly, Ms. Mak is entitled to preliminary and permanent injunction.

FIRST AMENDED COUNTER-CLAIM

# PRAYER FOR RELIEF

WHEREFORE, Counter-Claimant prays for judgment against Counter-Defendant as follows:

A) That Counter-Defendant be required to provide a full accounting to Ms. Mak for all profits derived from their use of the Work and their production, reproduction, and preparation of derivative works based on, distribution, and display of unauthorized Work in all media, from all sources, worldwide;

B) That Counter-Defendant be ordered to pay Ms. Mak all damages, including future damages, that Ms. Mak has sustained or will sustain as a result of the acts complained of herein, and that Ms. Mak be awarded any profits derived by Defendants as a result of said acts, or as determined by said accounting;

C) That Counter-Defendant pay to Ms. Mak actual or statutory damages under copyright law.

D) That Counter-Defendant pay to Ms. Mak the costs of this action and reasonable attorney's fees to be allowed to Ms. Mak by the court.

E) That Counter-Defendant be ordered to pay to Ms. Mak punitive damages as a result of Counter-Defendant's deliberate and willful misconduct;

F) That Counter-Defendant be ordered to pay to Ms. Mak pre-judgment and post-judgment interest on all applicable damages;

G) That Counter-Defendant be preliminarily and permanently enjoined from:

    (a) Copying, causing others to copy or using the Work.

    (b) Manufacturing, creating, producing, advertising, promoting, or displaying any product, event or interest display or website, bearing any simulation, reproduction, copy, derivative version, or colorable imitation of the Work.

H) Such other or further relief as the Court may deem proper.

////

////

FIRST AMENDED COUNTER-CLAIM

Respectfully submitted,

DATED: July 10, 2018                KRAMER HOLCOMB SHEIK LLP


By: /s/ John L. Holcomb, Jr.
    JOHN L. HOLCOMB, JR.
    SHAHROKH SHEIK

*Attorneys for Defendants and Counter-Claimant*

## DEMAND FOR JURY TRIAL

Counter-Claimants hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,

DATED: July 10, 2018                KRAMER HOLCOMB SHEIK LLP


By: /s/ John L. Holcomb, Jr.
    JOHN L. HOLCOMB, JR.
    SHAHROKH SHEIK

*Attorneys for Defendants and Counter-Claimants*